**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| LISA A. STEBAL, ) | CASE NO. 1:19-cv-983 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| ) | |
| ANDREW SAUL, ) | |
| *Comm'r of Soc. Sec.*, ) | **MEMORANDUM OPINION AND ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff, Lisa A. Stebal (hereinafter "Plaintiff"), challenges the final decision of Defendant Andrew Saul, Commissioner of Social Security (hereinafter "Commissioner"), denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to consent of the parties. (R. 12). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

**I. Procedural History**

On June 23, 2016, Plaintiff filed her applications for DIB, alleging a disability onset date of October 31, 2013. (R. 11, Transcript ("Tr.") 142-148). The application was denied initially and

upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 98-107). Plaintiff participated in the hearing on May 10, 2018, was represented by counsel, and testified. (Tr. 38-67). A vocational expert ("VE") also participated and testified. *Id*. On September 27, 2018, the ALJ found Plaintiff not disabled. (Tr. 33). On February 26, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-7). On May 2, 2019, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 13 & 15).

Plaintiff asserts the following assignments of error: (1) the ALJ erred by failing to give controlling weight to the evaluation of a treating physician, and did not provide a legally sufficient rationale for the partial rejection of said evaluation, and (2) the Appeals Council committed prejudicial error when it erroneously stated that the ALJ had decided a period of disability through December 31, 2018. (R. 13).

## II. Evidence

### A. Relevant Medical Evidence[1]

#### 1. Treatment Records

On April 11, 2017, Plaintiff was seen by Bhupinder Sawhny, M.D. (Tr. 523-524). Plaintiff had surgery back in 1991 performed by Dr. Sawhny. (Tr. 523). Plaintiff was "seen for long-standing low back pain radiating into the right buttock and along the posterior aspect of the right thigh and leg. She also has neck pain radiating into the left shoulder lateral aspect of the left arm

---

[1] The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

and forearm along with weakness in the left upper extremity." *Id*. He noted that "[o]ver these past several years patient has tried various conservative remedies including medication[,] caudal epidural blocks and physical therapy with no lasting relief. *Id*. On general physical examination, Plaintiff was moderately obese, in no acute distress, had 5/5 strength in all four extremities, except an area on the left which was 4.5/5, positive straight leg raising on the right, positive Lasegue's sign, and mildly decreased sensation of the left upper extremity. (Tr. 523-524). He ordered an MRI of the lumbar and cervical spine, ordered no prescriptions, and planned to start her on physical therapy. (Tr. 524).

On April 19, 2017, an MRI of the cervical spine yielded the following impression: "[a]t C5-C6 and C4-C5 broad-based disc osteophytes … causing effacement of the anterior subarachnoid space, causing mild-to-moderate central spinal canal stenosis mildly abutting the cord" with no evidence of any cord edema. (Tr. 440-441). A concurrent MRI of the lumbar spine yielded the following impression: laminectomy changes at L5-S1 with postsurgical dural ectasia, mild joint arthropathy and mild encroachment at L5-S1, and minimal disc bulge at L4-L5 with mild to moderate stenosis. (Tr. 442-443).

On July 27, 2017, Dr. Sawhny noted normal reflexes and full strength in all extremities. (Tr. 530). He observed that "MRI of the cervical spine shows a mild bulge of the C4-5 and C5-6 discs with foraminal encroachment bilaterally, while the lumbar spine MRI shows some postoperative changes with no significant compressive lesion." *Id*. He opined Plaintiff was a good candidate for caudal epidural blocks, also noting that "consideration may have to be given to a 2 level anterior interbody fusion cervical spine at C4-5 and C5-6." *Id*.

On September 12, 2017, Dr. Sawhny observed Plaintiff's neck movements were restricted to 50 percent of normal with tenderness bilaterally. (Tr. 528). Plaintiff reported taking Motrin

3

occasionally. *Id*. Dr. Sawhny ordered physical therapy for Plaintiff's neck pain. *Id*.

On November 9, 2017, Dr. Sawhny again observed positive straight leg raising, but also "[g]ood sensory and motor function in both lower extremities. (Tr. 526.)

### 2. Consultative Opinions and Medical Source Statements

On December 9, 2014, Plaintiff was seen by neurologist Dariush Saghafi, M.D. for a consultative examination. (Tr. 241-243). Plaintiff was measured as 5'8" tall and weighed 240 pounds. (Tr. 241). She rated her pain as seven of ten on a ten-point scale. *Id*. Dr. Saghafi observed Plaintiff was in no acute distress, but arose intermittently to walk about due to pain. (Tr. 242). On motor examination, Plaintiff's "[t]one and bulk are normal for age and build in both upper and lower extremities. There are no signs of focal atrophy, fasciculations, or myotonia. There is no evidence of a resting or action tremor. There was no orbiting or pronator drift." *Id*. On testing of the upper and lower extremities, Plaintiff has +5/5 in all areas. (Tr. 242-243). She had intact sensory examination, negative straight leg raising, and normal gait without predisposition to falls. *Id*. Dr. Saghafi did not review any diagnostic test reports in connection with his examination. (Tr. 243). His impression was as follows:

> **The patient suffers from lower back pain syndrome which is chronic. She is s/p fusion in the lumbar spine. She has been stable but with chronic pain residuals. For the past 14 months she has been experiencing slow and steady escalations in pain in this operated region to the point where she was released from her job. She is able to perform at least as likely as not some substantially gainful employment of a light duty nature but cannot be expected to lift and carry more than 5 lbs. For any distance.** The claimant is able to lift, push, and pull sufficiently to be able to perform ADL's. The claimant is able to bend, walk, and stand for up to 20 minutes at a time before having to change position. The claimant is able to understand the environment as well as peers and communicate satisfactorily. The claimant is able to travel independently.

(Tr. 243) (emphasis in original).

4

On December 15, 2014, psychologist Amber L. Hill, Ph. D., noted that Plaintiff's chief complaint was pain in her back and leg. (Tr. 250). Dr. Hill noted that Plaintiff "demonstrated normal posture and motor behavior," and did not observe any issues with attention and concentration during the interview. (Tr. 253).

On August 25, 2016, Plaintiff was again seen by Dr. Saghafi for a consultative examination. (Tr. 268-270). Plaintiff's weight had increased to 250 pounds, which Dr. Saghafi characterized as morbidly obese. (Tr. 268). She rated her pain as eight of ten on a ten-point scale. *Id*. Dr. Saghafi observed Plaintiff was in no acute distress. *Id*. On motor examination, the doctor noted Plaintiff's "[t]one and bulk are normal for age and build in both upper and lower extremities. There are no signs of focal atrophy, fasciculations, or myotonia. There is no evidence of a resting or action tremor. There was no orbiting or pronator drift." (Tr. 269). On testing of the upper and lower extremities, Plaintiff was +5/5 in all areas. (Tr. 269-270). She had "Light Touch- Right sciatic nerve distribution reduction to tactile stimulation," with the left side intact. (Tr. 270). Dr. Saghafi observed positive straight leg raising, and a mildly antalgic gait without predisposition to falls. *Id*. Dr. Saghafi did not review any diagnostic test reports in connection with his examination. (Tr. 270). His impression was as follows:

> **The patient more likely than not suffers from right sciatica vs. L5 radiculopathy 2nd to s/p fusion L3-5 following a low back injury over 20 years ago that never fully healed.** The claimant is able to lift, push, and pull sufficiently to be able to perform ADL's. She can lift up to 10 lbs. The claimant is able to bend, walk, and stand for up to 10 min. The claimant is able to understand the environment as well as peers and communicate satisfactorily. The claimant is able to travel independently.

(Tr. 270) (emphasis in original).

On August 31, 2016, State Agency physician James Cacchillo, D.O., reviewed the record and opined that Plaintiff could do the following: lift ten pounds frequently and twenty pounds

occasionally; sit and stand/walk each for about six hours in an eight-hour workday; frequently kneel, crouch, stoop, and crawl; and occasionally climb ladders, ropes, or scaffolds. (Tr. 76-77). He opined Plaintiff had no manipulative limitations. (Tr. 77). Dr. Cacchillo stated that Dr. Saghafi's August 2016 opinion was "an overestimate of the severity of the individual's restrictions/limitations." (Tr. 78).

On February 9, 2017, Dr. Saghafi completed a third consultative examination. (Tr. 428-430). She rated her pain as eight of ten on a ten-point scale. *Id*. Dr. Saghafi observed Plaintiff was in no acute distress. *Id*. On motor examination, Plaintiff's "[t]one and bulk are normal for age and build in both upper and lower extremities. There are no signs of focal atrophy, fasciculations, or myotonia. There is no evidence of a resting or action tremor. There was no orbiting or pronator drift." (Tr. 429). On testing of the upper and lower extremities, Plaintiff was +5/5 in all areas. *Id*. On sensory examination, she was intact bilaterally. (Tr. 430). Dr. Saghafi observed positive straight leg raising, and an "antalgic gait to both sides without predisposition to falls and secondary to pain in the low back." *Id*. Dr. Saghafi did not review any diagnostic test reports in connection with his examination. *Id*. His impression was as follows:

> **The patient is s/p laminectomy and multiple lumbar disk repair, remote. She suffers from what is at least as likely as not a right sided sciatica. She is morbidly obese and s/p thyroidectomy for goiter.** The claimant is able to lift, push, and pull sufficiently to be able to perform AOL's. She is capable of carrying up to 5 lbs. The claimant is able to bend, walk, and stand for up to 10 min. before having to change position or take a break. The claimant is able to understand the environment as well as peers and communicate satisfactorily. The claimant is able to travel independently.

(Tr. 430) (emphasis in original).

On February 21, 2017, State Agency physician Rannie Amiri, M.D., reviewed the updated record and opined that Plaintiff could do the following: lift ten pounds frequently and twenty

6

pounds occasionally; sit and stand/walk each for about six hours in an eight-hour workday; frequently kneel, crouch, and climb ramps or stairs; occasionally crawl and stoop; and, never climb ladders, ropes, or scaffolds. (Tr. 91-93). She opined Plaintiff had no manipulative limitations. (Tr. 92). Dr. Amiri also opined that Plaintiff should avoid operating dangerous machinery and working around unprotected heights. (Tr. 93). She explained that Plaintiff had "[n]o gait abnormalities noted during FO observation or psych CE," "ADLs obtained during psych CE relate clmt regularly goes to the pool and does major house cleaning once /week," and "[d]uring recent CE, it is noted clmt exercises in the pool 6x/week for 30 minutes and clmt believes has resulted in a 10 lb weight loss over the last several months." (Tr. 93). Dr. Amiri found that Dr. Saghafi's February 2017 opinion was overly limiting when compared to the objective findings. (Tr. 91).

On January 16, 2018, Dr. Sawhny completed a checkbox-style medical source statement. (Tr. 520-521). The doctor checked boxes indicating that Plaintiff could stand/walk for a total of two hours in an eight-hour workday in thirty-minute increments. (Tr. 520). He also indicated Plaintiff could sit for a total of four hours in an eight-hour workday in one-hour minute increments. *Id*. In addition, although inconsistent, the doctor checked boxes indicating that Plaintiff needed two-hour rest periods each day while also checking a box indicating that fifteen-minute breaks twice daily, coupled with a one-hour lunch break, provided sufficient rest. *Id*. Dr. Sawhny opined that Plaintiff could lift up to ten pounds occasionally and rarely or never lift any greater weight. (Tr. 521). Dr. Sawhny also checked boxes indicating Plaintiff could reach, grasp, and finger frequently with her right arm/hand, but only occasionally on the left. *Id*. Plaintiff could frequently use her feet in repetitive movements of leg controls on the left, but only occasionally on the right. *Id*. The doctor did not provide explanation for the limitations assessed

7

save for diagnoses of herniated cervical discs and lumbosacral radiculopathy. (Tr. 521).[2]

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s)

---

[2] As Plaintiff has not challenged the ALJ's credibility assessment or the VE's testimony, the court foregoes a summary of the hearing testimony.

does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2. The claimant has not engaged in substantial gainful activity since October 31, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease and of the cervical and lumbar spines with radiculopathy and obesity. (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except that she can occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, or crouch; never crawl or kneel; frequently reach overhead and all around; cannot be exposed to hazards such as heights or machinery (but would be able to avoid ordinary hazards such as boxes on the floor, doors ajar, or approaching people or vehicles); she can frequently handle and finger; and she would need a sit/stand option that would allow her to stand for 5 minutes every 30 minutes.

6. The claimant is capable of performing past relevant work as a tax preparer and an accounting clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

> 7. The claimant has not been under a disability, as defined in the Social Security Act, from October 31, 2013, through the date of this decision (20 CFR 404.1520(1)).

(Tr. 27-33).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. Plaintiff's Assignments of Error

#### 1. Weight Assigned to Treating Physician Opinion

In the first assignment of error, Plaintiff asserts that the ALJ erred by violating the treating

10

physician rule with respect to the weight assigned to the opinion of Dr. Sawhny. (R. 13, PageID# 685-689). The Commissioner does not challenge that Dr. Sawhny constitutes a treating source. (R. 15, PageID# 697, 700-701). The Commissioner, however, argues that the ALJ satisfied the treating physician rule, noting that the doctor did not provide any supporting explanation for the assessed restrictions. (R. 15, PageID# 702).

"Provided that they are based on sufficient medical data, 'the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). In other words, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ does not give a treating source's opinion controlling weight, then the ALJ must give good reasons for doing so that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See Wilson*, 378 F.3d at 544 (*quoting* Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5). The "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is "in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that [her] physician has deemed [her] disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544 (*quoting Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)); *see also Johnson v.*

11

*Comm'r of Soc. Sec.*, 193 F. Supp. 3d 836, 846 (N.D. Ohio 2016) ("The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.")

It is well-established that administrative law judges may not make medical judgments. *See Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.") (*quoting Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009). If fully explained with appropriate citations to the record, a good reason for discounting a treating physician's opinion is a finding that it is "unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence." *Conner v. Comm'r of Soc. Sec.*, 658 Fed. App'x 248, 253-254 (6th Cir. 2016) (*citing Morr v. Comm'r of Soc. Sec.*, 616 Fed. App'x 210, 211 (6th Cir. 2015)); *see also Keeler v. Comm'r of Soc. Sec.*, 511 Fed. App'x 472, 473 (6th Cir. 2013) (holding that an ALJ properly discounted the subjective evidence contained in a treating physician's opinion because it too heavily relied on the patient's complaints).

The ALJ addressed Dr. Sawhny's January 2018 medical source statement as follows:

> The undersigned accords partial weight to the opinion of Bhupinder Sawhny, MD. (Ex. 15F). On January 16, 2018, Dr. Sawhny filled out a Medical Source Statement form in which he opined that the claimant could stand or walk continuously for 30 minutes at a time; stand for 2 hours out of an 8-hour workday; sit continuously for 1 hour; sit for a total of 4 hours out of an 8-hour workday; would need to rest 2 hours out of an 8-hour workday; lift up to 10 pounds occasionally and up to 100 pounds rarely; frequently reach, grasp and finger with

> the right upper extremity; occasionally reach, grasp, and finger with the left upper extremity; occasionally use right foot controls; frequently use left foot controls; and never or rarely bend, squat, crawl, or climb. Although Dr. Sawhny is an acceptable medical source with a treating relationship with the claimant, his opinion is not given controlling weight because it is not entirely consistent with other substantial evidence in the record that indicates the claimant's limitations are not as severe, Dr. Sawhny failed to provide an explanation of his restrictions, he had not seen the claimant since November 2017, and this opinion also concerns the claimant's residual functional capacity, which is an issue reserved to the Commissioner. (20 CFR 404.1527( d)). Dr. Sawhny himself treated the claimant conservatively for her neck and back pain with injections, ibuprofen, and physical therapy. The claimant had positive straight leg raising tests and an antalgic gait at times, but largely full strength in all extremities, normal pulses, and mild to moderate degenerative cervical and lumbar changes. (Ex. 16F). These notes suggest that she could perform less than the full range of light, not sedentary, work. Therefore, this opinion is given only partial weight.

(Tr. 32).

Unless a treating source's opinion is given controlling weight, the ALJ is required to consider the following factors in deciding the weight to give any medical opinion: the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the source. 20 C.F.R. § 404.1527(c); *see generally Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 375 (6th Cir. 2013); *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). While the ALJ is directed to consider such factors, the ALJ is not required to provide an "exhaustive factor-by-factor analysis" in her decision. *See Francis v. Commissioner*, No. 09-6263, 2011 WL 915719, at *3 (6th Cir. March 16, 2011).

As noted above, Dr. Sawhny's opinion was contained in a checkbox questionnaire devoid of any explanation. (Tr. 520-521). The ALJ took explicit notice of this lack of explanation, stating that the form completed by Dr. Sawhny "failed to provide an explanation of his restrictions." (Tr. 32). The ALJ's observation is entirely accurate, as the checkbox form only

13

contains diagnoses of herniated cervical discs and lumbosacral radiculopathy. (Tr. 520-521).[3] In other words, the ALJ found there was a lack of supportability. Pursuant to the regulations, "[s]upportability" is one of the factors specifically set forth in the regulations used to evaluate opinion evidence, and states that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3).[4]

In addition, the ALJ points out that Dr. Sawhny treated the claimant conservatively with injections, ibuprofen, and physical therapy. (Tr. 32). Further, while acknowledging that Plaintiff, at times, had positive straight leg raising tests and an antalgic gait, the ALJ's decision concludes that other records undermine the doctor's opinion—referencing that objective tests in the record show Plaintiff had largely full strength in all extremities and normal pulses, as well as the

---

[3] The inclusion of a diagnosis alone, however, does not save a deficient medical source opinion. *See, e.g., Toll v. Commissioner*, No. 1:16CV705, 2017 WL 1017821 at *4 (W.D. Mich. Mar. 16, 2017) ("even if the ALJ failed to provide good reasons" for assigning little weight to a treating source's opinion, such error was harmless where the opinion consisted of a check-box worksheet lacking any explanation beyond a diagnosis).

[4] Given the complete lack of any meaningful explanation in the questionnaire by Dr. Sawhny, the opinion is arguably patently deficient and not subject to the rigors of the treating physician rule, especially as it relates to those opinions not adopted by the ALJ. Though not argued by the parties, the Sixth Circuit and numerous district courts have found that failure to give good reasons for rejecting a check-box/checklist opinion, which is unaccompanied by any explanation, is harmless error. *Hernandez v. Commissioner*, 644 Fed. App'x 468, 474 (6th Cir. Mar. 17, 2016) (finding that such evidence was "'weak evidence' at best' and meets our patently deficient standard") (citations omitted); *accord Shepard v. Commissioner*, 705 Fed. App'x 435 (6th Cir. Sept. 26, 2017); *Denham v. Commissioner*, No. 2:15CV2425, 2016 WL 4500713, at *3 (S.D. Ohio Aug. 29, 2016) (magistrate judge "correctly found that any error in the ALJ's consideration of Lewis' evaluation was harmless because the check-box form was so patently deficient that the Commissioner could not possibly credit it"). Because the court finds that the ALJ gave sufficiently good reasons for not adopting Dr. Sawhny's s opinion, it need not consider whether the checkbox questionnaire is so patently deficient that a violation of the treating physician rule would be deemed harmless error.

description in the record of Plaintiff's degenerative cervical and lumbar changes as mild to moderate. (Tr. 32). Thus, the ALJ's discussion concerning the supportability and consistency factors satisfied the treating physician rule. *See generally Crum v. Commissioner*, No. 15-3244, 2016 WL 4578357, at *7 (6th Cir. Sept. 2, 2016) (suffices that ALJ listed inconsistent treatment records elsewhere in the opinion); *Hernandez v. Commissioner*, No. 15-1875, 2016 WL 1055828, at *4 (6th Cir. Mar. 17, 2016). The decision renders it apparent that the ALJ considered the proper factors in determining how much weight to ascribe to Dr. Sawhny's opinion, even though the decision does not explicitly discuss each regulatory factor. *See Francis*, 2011 WL 915719, at *3 (the regulations require only consideration of the factors, and does not require an the ALJ to articulate "an exhaustive factor-by-factor analysis"); *Gayheart*, 710 F.3d at 376.

The first assignment of error, therefore, is without merit.[5]

### 2. Clerical Error by the Appeals Council

In the second assignment of error, Plaintiff asserts that that the Appeals Council's opinion from February 26, 2019, contained a prejudicial error in that it states: "[t]he [ALJ] decided your case *through December 31, 2018*." (Tr. 2) (emphasis added). Plaintiff states this is an error because the ALJ's decision stated, "the undersigned concludes that the claimant has not been

---

[5] Defendant has also argued that the Sixth Circuit, as well as courts in this district, have found that opinions regarding absences and breaks at a work-preclusive frequency are essentially "tantamount to a disability opinion," and should therefore be treated the same as other issues reserved to the Commissioner. (R. 15, PageID# 703, citing *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011); *Littleton v. Comm'r of Soc. Sec.*, No. 5:12 CV 2756, 2013 WL 6090816, at *11 (N.D. Ohio Nov. 19, 2013); *Saulic v. Colvin*, No. 5:12CV2753, 2013 WL 5234243, at *9 (N.D. Ohio Sept. 16, 2013); *Chhay v. Colvin*, No. 1:13-CV-02229, 2014 WL 4662024, at *8 (N.D. Ohio Sept. 17, 2014)). As the court has found no violation of the treating physician rule, it need not address whether Dr. Sawhny's opinions, especially regarding work-preclusive breaks, was the equivalent of offering an opinion on an issue reserved to the Commissioner that is not entitled to any special weight.

under a disability within the meaning of the Social Security Act from October 31, 2013 through the date of this decision," which was September 27, 2018.[6] (R. 13, PageID# 689). Plaintiff argues that if the erroneous date is enforced, it would preclude her from filing a new claim for benefits beginning after September 27, 2018. (R. 13, PageID# 689-690).

The Commissioner concedes that Plaintiff correctly asserts that the Appeals Council's denial of review erroneously stated that the ALJ decided Plaintiff's claim through December 31, 2018, instead of the actual adjudication date of September 27, 2018. (R. 15, PageID# 704). Nevertheless, the Commissioner maintains that the Appeal Council's clerical error is inconsequential to Plaintiff's ability to file a new claim, and points out that Plaintiff has not argued that the Appeals Council refused to correct the clerical error or that she ever requested a correction from the Appeals Council. *Id*. Most importantly in this court's view, Plaintiff has not argued that she attempted to file a new application for benefits but was denied based on the clerical error. As such, the court declines to remand to correct a speculative injury.

## IV. Conclusion

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

s/ *David A. Ruiz*<br>United States Magistrate Judge

Date: August 28, 2020

---

[6] The ALJ's decision is dated September 27, 2018, and it also includes a reference to the date December 31, 2018, which is the ALJ's finding that "the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2018." (Tr. 25, 27, 33).